UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANE DOE,

                              Plaintiff,

                                                              Case # 21-CV-06353-FPG

v.

                                                                DECISION AND ORDER

AR, MICHAEL S. RUSSELL, ANDREA T. RUSSELL,
MJN, ROBERT G. NOVITSKY, ALICIA M. NOVITSKY
a/k/a ALICIA JEAN, TJH, TIMOTHY J. HAY,
SHANNON M. HAY, BA, LOUIS B. APPLEBAUM, and
JULIE D. APPLEBAUM,

                              Defendants.
_____

## INTRODUCTION

This case involves serious allegations and factual circumstances that are highly sensitive and of a personal nature. Plaintiff Jane Doe filed this action to recover damages resulting from an alleged rape and sexual assault that occurred in 2014 when she was only fourteen years old. Plaintiff has sued four of her former schoolmates—the alleged perpetrators—and each of their respective parents and/or guardians on various theories of federal and state liability. Presently before the Court are Defendants' motions to dismiss Plaintiff's Complaint. ECF Nos. 14, 27, 29, 41, 42, 47.

For the reasons set forth below, Defendants BA, Julie Applebaum, and Louis Applebaum's motion to dismiss for failure to state a claim, ECF No. 14, is GRANTED IN PART and DENIED AS MOOT IN PART; Defendants Alicia Novitsky and Robert G. Novitsky's motion to dismiss for failure to state a claim and/or motion for summary judgment, ECF No. 27, is DENIED AS MOOT; Defendant MJN's motion to dismiss for failure to state a claim, ECF No. 29, is

GRANTED IN PART; Defendants Andrea Russell and Michael Russell's motion to dismiss for failure to state a claim, ECF No. 41, is DENIED AS MOOT; Defendant AR's motion to dismiss for failure to state a claim, ECF No. 42, is GRANTED IN PART; and Defendants TJH, Shannon Hay, and Timothy Hay's motion to dismiss for failure to state a claim, ECF No. 47, is GRANTED IN PART and DENIED AS MOOT IN PART.

The Court dismisses Plaintiff's federal-law claims. At this time, the Court need not address the sufficiency of Plaintiff's state-law claims, as it does not intend to exercise supplemental jurisdiction over those claims, and no other basis for jurisdiction exists. Before the Court dismisses the case on jurisdictional grounds, it will give Plaintiff an opportunity to amend her Complaint.

## FACTUAL BACKGROUND

When courts evaluate motions to dismiss, they must accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015). Therefore, for the purposes of evaluating Defendants' motions, the facts below are taken from Plaintiff's Complaint and are accepted as true.

In August 2014, Plaintiff was fourteen years old and about to start her freshman year at Victor High School ("Victor"). ECF No. 1 ¶ 20. On August 24, 2014, Defendant BA ("BA") invited Plaintiff to "hang out" at his house. *Id.* ¶ 22. BA was Plaintiff's classmate at Victor and was also about to begin his freshman year. *Id.* ¶ 21. At that time, BA lived with his parents, Defendants Louis and Julie Applebaum (the "Applebaums"). *Id.* ¶¶ 27-28.

Prior to August 2014, BA frequently held parties at the Applebaum house, during which he gave alcohol to those in attendance. ECF No. 1 ¶ 30. The Applebaums permitted BA to host these parties and failed to take any preventative measures to ensure that alcohol that belonged to

them was not available to BA or the other minors who attended his parties. *Id.* For example, the Applebaum's basement had an unlocked wine cellar from which BA and other minors could easily access alcohol. *Id.* ¶¶ 28-29.

Plaintiff accepted BA's invitation and brought a friend with her. *Id.* ¶¶ 22-23. After Plaintiff arrived at the Applebaum's house, BA served her alcohol. *Id.* ¶ 25. The Applebaums were present in the house at the time and the alcohol belonged to them. ECF No. 1 ¶¶ 26-27. At some point, BA asked Plaintiff if she wanted him to invite his friends, Defendant AR ("AR"), Defendant MJN ("MJN"), and Defendant TJH ("TJH") to hang out with them. *Id.* ¶ 31. Plaintiff said she did not want them to come over, but BA invited them anyway "over Plaintiff's objection." *Id.* ¶ 32.

AR, MJN, and TJH were also Victor students and in the same class year as BA and Plaintiff. *Id.* ¶ 21. When BA reached out to AR, MJN, and TJH to invite them over to the Applebaum's house that night, they had already been drinking alcohol at AR's house to celebrate AR's birthday. *Id.* ¶ 33. At that time, AR lived with his parents, Defendants Michael and Andrea Russell (the "Russells"). ECF No. 1 ¶¶ 33-34. The Russells provided AR with the alcohol that he, MJN, and TJH consumed while at the Russell house. *Id.* ¶ 34. At some point in time before MJN arrived at the Appelbaum's house on August 24, 2014, he was also provided with alcoholic drinks by his parents, Defendants Robert Novitsky and Alicia Novitsky (the "Novitskys"). *Id.* ¶ 35. Similarly, TJH's parents, Defendants Timothy Hay and Shannon Hay (the "Hays") provided him with alcohol at some point in time prior to his arrival at the Applebaum residence. *Id.*

After AR, MJN, and TJH arrived at the Applebaum house and the group had been "hanging out and drinking," Plaintiff became severely intoxicated. *Id.* ¶ 36. AR saw that Plaintiff was severely intoxicated and took her to an unfinished room at the back of the basement. ECF No. 1

3

¶¶ 37-38. The room was empty except for a mattress on the floor. *Id.* ¶ 38. After escorting Plaintiff to the back room, AR closed the door, started kissing Plaintiff, and began to undress her. *Id.* ¶ 39. Plaintiff told AR she wanted to leave the back room and go back with her friend, but AR refused to let her go. *Id.* ¶ 40. Instead of allowing Plaintiff to exit the back room, AR took his pants off and tried to force Plaintiff to perform oral sex. *Id.* ¶ 41. Plaintiff vomited when AR tried to put his genitals in her mouth. ECF No. 1 ¶ 42.

After Plaintiff got sick, AR left the back room and then reentered with MJN, TJH, and BA. *Id.* ¶ 43. Plaintiff was still undressed when the four boys returned to the room together. *Id.* ¶ 44. Plaintiff's friend came and helped Plaintiff to the bathroom so she could get cleaned up from having vomited. *Id.* ¶ 45. AR, MJN, and TJH decided to leave the Applebaum house because Plaintiff had gotten sick and the three boys told BA that they were heading home. *Id.* ¶ 46. The three boys departed but, rather than going home, returned together to the house about fifteen or twenty minutes later. ECF No. 1 ¶ 47.

When AR, MJN, and TJH returned to the house, Plaintiff was still intoxicated. The three boys grabbed her and carried her to the back room. *Id.* ¶ 48. Once in the room, they undressed Plaintiff against her will, put her on her knees, and took their pants off. *Id.* ¶ 50. The three then inserted their genitals into Plaintiff's mouth and forced her to perform oral sex against her will. *Id.* ¶ 51. They touched Plaintiff's genitalia and breasts without her consent and against her will. *Id.* ¶ 52. Plaintiff tried to resist this touching and refused to have sex with the boys. ECF No. 1 ¶ 53.

Plaintiff alleges that AR, MJN, and TJH "continued to rape Plaintiff orally against her will and without consent for approximately 20 minutes." *Id.* ¶ 58. During those twenty minutes, Plaintiff made several attempts to crawl toward the door of the back room, but, each time, AR,

MJN, and TJH grabbed her by the hips and dragged her away from the door. *Id.* ¶ 54. At times, they stood between Plaintiff and the door to the back room to prevent her from leaving. *Id.* ¶ 57. Plaintiff could hear her friend on the other side of the door banging on the door to the back room to try to help her, but BA was guarding the door and preventing Plaintiff's friend from coming to her aid. *Id.* ¶ 55. AR, MJN, and TJH "took pictures of Plaintiff being orally raped." *Id.* ¶ 59. "On more than one occasion" during the twenty-minute ordeal, Plaintiff "saw flashes." ECF No. 1 ¶ 60. She asked the three boys what the flashes were and they told her "it was just a flashlight." *Id.*

Plaintiff "lost consciousness during the rape" while in the back room, and "her next memory is sitting on the couch in BA's basement." *Id.* ¶ 61. She does not recall how she got to the couch from the back room. *Id.* ¶ 62. Once seated on the couch Plaintiff was "in shock and could not move her body." *Id.* ¶ 64. BA proceeded to undress Plaintiff again while she was in this state "and inserted his fingers in Plaintiff's genitalia for approximately one minute, against Plaintiff's will and without her consent." ECF No. 1 ¶¶ 63-64. At some point thereafter, Plaintiff was able to leave, and she and her friend left the house. *Id.* ¶ 65.

After the August 24, 2014 incident, "AR, MJN, TJH, and BA showed the pictures they took of Plaintiff to numerous students at Victor Senior High School." *Id.* ¶ 66. At Victor's freshman orientation on the day following the assault at the Applebaum's house, Plaintiff was approached by a male classmate who asked "if [she] had fun with [AR] , [MJN], and [TJH] last night." *Id.* ¶ 67. In the months that followed, Plaintiff was subjected to "numerous instances in which Victor Senior High School students made reference to the August 2014 rape of Plaintiff." *Id.* ¶ 68.

In December 2014, Plaintiff was at her friend's house when "another student at Victor Senior High School came up to Plaintiff and told her that he recognized her from the photos, then

made several jokes relating to the rape of Plaintiff." ECF No. 1 ¶ 68. A few months later, during a spring 2015 class trip to Washington, D.C., eight male students in the back of a bus chanted "three dicks" at Plaintiff, seemingly in reference to the August 24, 2014 assault. *Id* ¶ 69. One of those male students appeared to be masturbating under a blanket while seated on the bus and asked Plaintiff to "help him." *Id.* He also, upon exiting the bus, "ran up to Plaintiff and slapped her, causing her male classmates to laugh." *Id.*

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 28, 2021, filing a Complaint and a motion to proceed pseudonymously under the name "Jane Doe."[1] ECF No. 1; ECF No. 2. Plaintiff's Complaint includes forty-five causes of action, five of which arise under federal law, against twelve defendants. ECF No. 1. Defendants BA, Julie Applebaum, and Louis Applebaum moved to dismiss on June 14, 2021. ECF No. 14. Defendants Alicia Novitsky and Robert Novitsky moved to dismiss and/or for summary judgment on July 9, 2021. ECF No. 27. By separate motion, Defendant MJN moved to dismiss on July 9, 2021. ECF No. 29. Defendants Andrea Russell and Michael Russell moved to dismiss Plaintiff's Complaint on August 12, 2021. ECF No. 41. Defendant AR also moved to dismiss on August 12, 2021. ECF No. 42. Finally, Defendants TJH, Shannon Hay, and Timothy Hay moved to dismiss on August 31, 2021. ECF No. 47. Each of Defendants' respective motions is now fully briefed.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable

---

[1] The Court granted Plaintiff's motion to proceed under a pseudonym on September 7, 2021, without objection from Defendants. ECF No. 49.

inferences in the plaintiff's favor." *In re Express Scripts Holding Co. Secs. Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, at *6 (S.D.N.Y. May 22, 2018) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  However, a court "is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alterations and internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 65-66 (2d Cir. 2018) (citing *Iqbal*, 556 U.S. at 678) (citation and internal quotation marks omitted).

## DISCUSSION

Plaintiff brings forty-five claims, five of which arise under federal law.  The only bases for jurisdiction that Plaintiff alleges are (1) federal question jurisdiction and (2) supplemental jurisdiction.  *See* ECF No. 1 ¶ 5.  As discussed below, the Court concludes that Plaintiff has not sufficiently pleaded any of her federal-law claims.  Because those claims must be dismissed, the only basis for jurisdiction over the remaining state-law claims is supplemental jurisdiction, which the Court intends to decline to exercise under the circumstances.  Therefore, the Court intends to dismiss all of the claims, unless Plaintiff files an amended complaint that cures the deficiencies in her federal-law claims.

**I.     28 U.S.C. § 1985(3) Claim**

The Court begins by addressing Plaintiff's claim for conspiracy to interfere with her civil rights against Defendants AR, MJN, TJH, and BA, which is brought under 42 U.S.C. § 1985(3). Defendants AR, MJN, TJH, and BA each moved to dismiss this claim.[2]  ECF No. 14-1 at 9-12; ECF No. 29-1 at 8-12; ECF No. 42-1 at 9-12; ECF No. 47 at 6.

---

[2] The Court notes that Defendant TJH, who is proceeding *pro se*, adopted and incorporated by reference the arguments of his co-Defendants.  ECF No. 47 at 6.

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted). "Further, in order to reach a purely private conspiracy under § 1985(3), such as the one alleged here, a plaintiff must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Frasco v. Mastic Beach Prop. Owners' Ass'n*, No. 12–CV–2756, 2014 WL 3735870, at *4 (E.D.N.Y. July 29, 2014) (internal quotation marks omitted). Indeed, "[w]hen no state action is involved, only those constitutional rights that exist against private actors may be challenged under the section." *Peavey v. Polytechnic Inst. of New York*, 775 F. Supp. 75, 78 (E.D.N.Y. 1991).

Here, Defendants AR, MJN, TJH, and BA argue, *inter alia*, that Plaintiff has failed to adequately allege the deprivation of a constitutional right that is protected against private encroachment.[3] ECF No. 14-1 at 11; ECF No. 29-1 at 11-12; ECF No. 42-1 at 12; ECF No. 47 at 6. In response to this argument, Plaintiff asserts that "Section 1985(3) makes clear that Plaintiff's protected rights are the equal protection of the laws, or of equal privileges and immunities under the laws." ECF No. 33 at 12.

To the extent Plaintiff's allegations raise a claim premised on her right not to be deprived of property, *see* ECF No. 1 ¶ ("Defendants AR, MJN, TJH, and BA conspired . . . to injure

---

[3] The Court finds dismissal is warranted based on this argument and, therefore, does not address whether Plaintiff has adequately alleged the other elements that make out a cause of action under § 1985(3).

8

Plaintiff's person and property . . . ."), such a claim fails. The right not to deprived of property is "unquestionably . . . protected only against state action" and, "[t]hus, absent state action, [this] allegation[ ] [is] insufficient, as a matter of law, to support a claim under section 1985(3)." *Emanuel v. Barry*, 724 F. Supp. 1096, 1102 (E.D.N.Y. 1989).

Plaintiff's allegations related to the security of her person similarly fail to state a cause of action under section 1985(3). Such a right is not safeguarded from private encroachment in the Federal Constitution and thus does not provide the proper foundation for a section 1985(3) claim. *See id.* ("Plaintiffs are correct that 'the law' does guarantee them the right to be secure in their persons, but the law which does so is the criminal and tort law of their state, not the federal constitution."); *see also Goodman by Goodman v. Bremby*, No. 3:16-cv-00665, 2017 WL 4169427, at *11 (D. Conn. 2017) ("The Supreme Court has been reluctant to turn § 1985 into a general federal tort law." (citation & internal quotation marks omitted)).

Finally, the Court considers whether Plaintiff's allegations that she was deprived equal protection of the laws is sufficient to support a section 1985(3) claim. "Although the language of § 1985(3), referring to deprivations of equal protection of the laws, or of equal privileges and immunities under the laws, resembles the Fourteenth Amendment's guarantees against state abridgement of citizens' privileges and immunities and state denial of equal protection of the laws, . . . a deprivation of equal protection under § 1985(3) does not by its terms require state action." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 461 (D. Vt. 2013) (citations & internal quotation marks omitted). However, "§ 1985(3) does not provide substantive rights itself; it provides a remedy for persons injured by a conspiracy to deprive them of the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.*; *see also Emanuel*, 724 F. Supp. at 1102 ("[T]he [Supreme] Court has consistently emphasized that the statute does not create substantive rights,

9

thus precluding, as a matter of law, such a broad interpretation of 'equal protection.'"). As of now, "the Supreme Court has recognized only two rights protected against private as well as official encroachment under the deprivation clause: the right to be free from involuntary servitude and the right of interstate travel." *Jenkins*, 983 F. Supp. 2d at 461 (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993)).

Therefore, "because of [Plaintiff's] failure to allege deprivation of a constitutional right assertable against private actors, dismissal of [her] 1985(3) claim cannot be avoided." *See Emanuel*, 724 F. Supp. at 1103; *see also Bray*, 506 U.S. at 278 (dismissing a § 1985(3) "deprivation" claim "because [respondents] have identified no right protected against private action that has been the object of the alleged conspiracy" and noting that "only the Thirteenth Amendment right to be free from involuntary servitude, . . . and, in the same Thirteenth Amendment context, the right of interstate travel," have been recognized as "aimed at interfering with rights . . . protected against private, as well as official, encroachment"); *Frasco*, 2014 WL 3735870, at *6 (granting summary judgment where plaintiffs failed to show "any state action, which is required for a Fourteenth Amendment-based § 1985(3) conspiracy").

Accordingly, Defendants BA, TJH, MJN, and AR's respective motions to dismiss Plaintiff's Section 1985 claim are GRANTED. Furthermore, because this claim fails due to a legal defect, rather than a pleading deficiency, the claim is DISMISSED WITH PREJUDICE. *See D'Entremont v. Atlas Health Care Linen Servs., Co.*, No. 12-CV-60, 2013 WL 998040, at *5 (N.D.N.Y. Mar. 13, 2013).

**II.     18 U.S.C. § 2255 Claims**

The Court considers next Plaintiff's second through fifth causes of action, which allege violations of 18 U.S.C. § 2255, also known as "Masha's Law," against Defendants AR, MJN, TJH,

and BA.  Each Defendant separately moved to dismiss this claim.[4]  ECF No. 14-1 at 12-13; ECF No. 29-1 at 12-13; ECF No. 42-1 at 12-14; ECF No. 47 at 6.

18 U.S.C. § 2255 ("Section 2255") "was enacted as part of The Child Abuse Victims' Rights Act of 1986." *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013).  The statute "expanded the scope of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95–225, 92 Stat. 7 (1978), to provide a civil remedy for personal injuries suffered by victims of child sexual exploitation." *Id.* (internal quotation marks omitted).  Section 2255(a) provides in pertinent part:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee.  Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $ 150,000 in value.

18 U.S.C. § 2255(a).  "[I]n order to be subject to liability under Section 2255, a defendant must be proven to have violated at least one of the criminal statutes listed in Section 2255 by a preponderance of the evidence." *Singleton*, 951 F. Sup. 2d at 584 (internal quotation marks omitted).

Plaintiff's theory for these claims runs as follows.  Plaintiff alleges that "on more than one occasion, [she] saw flashes as she was being raped orally."  ECF No. 1 ¶ 60.  From this, Plaintiff infers that Defendants AR, MJN, and TJH took photographs of the sexual assault—photographs which would be considered child pornography under federal law.  *See* 18 U.S.C. § 2256(8) (defining child pornography).  She further alleges that Defendants AR, MJN, TJH, and BA showed

---

[4] As with Plaintiff's § 1985(3) claim, Defendant TJH, who is proceeding *pro se*, adopted and incorporated by reference the arguments of his co-Defendants.  ECF No. 47 at 6.

the photographs "to numerous students at Victor Senior High School," *Id.* ¶ 66, a claim which is bolstered by the several instances where Victor students made comments to Plaintiff about the assault. *See id.* ¶¶ 68-69. Though Plaintiff equivocates as to which underlying criminal statute Defendants violated—she cites Section 2252 in her Complaint but Section 2252 *and* Section 2251 in her opposition briefs, *see e.g.*, ECF No. 55 at 14—she asserts that Defendant AR, MJN, TJH, and BA's conduct comes within the scope of Section 2255 because they used "articles of interstate commerce"—*i.e.*, a "smart phone[] and/or similar electronic device[]"—to produce the photographs and distribute them to others. *See* ECF No. 39 at 13; ECF No. 50 at 16; ECF No. 55 at 14.

Relying on Plaintiff's complaint, Defendants AR, MJN, TJH, and BA understand Plaintiff to be arguing that they violated Section 2252. *See* ECF No. 14-1 at 12-13; ECF No. 29-1 at 12-13; ECF No. 42-1 at 12-14. Defendants argue that any such claim fails because Plaintiff has failed to allege the interstate or foreign commerce element of Section 2252. *Id.*; 18 U.S.C. § 2252(a)(1)-(4). The Court agrees.

As an initial matter, Plaintiff's equivocation makes it difficult to discern which statute Defendants AR, MJN, TJH, and BA are alleged to have violated. But generally speaking, the Complaint does not present sufficient facts from which a link to interstate commerce may be inferred. For example, there is no allegation that the pictures were transmitted over the internet or other electronic means. *C.f. United States v. Clarke*, 979 F.3d 82, 93 (2d Cir. 2020) ("The use of the Internet to move video files from [Defendant's] computer to the government agents' computer constituted transportation using a means or facility of interstate commerce within the meaning of § 2252(a)(1)."). Plaintiff merely alleges that Defendants AR, MJN, TJH, and BA "showed" the pictures to other students, without any allegations regarding transportation or transmission. *See*

ECF No. 1 ¶ 66. Similarly, the Complaint lacks sufficient allegations that the device used to capture the photographs would constitute an "article" of interstate commerce. There are no allegations, for example, that the device used to capture the pictures was manufactured outside of the United States. *C.f. United States v. Boles*, 914 F. 3d 95, 107 (2d Cir. 2019) (finding interstate or foreign commerce element satisfied "where a defendant possessed images of child pornography on computer equipment manufactured outside of this country."); *United States v. Holston*, 343 F. 3d 83, 90 (2d Cir. 2003) (concluding that "insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause."); *United States v. Weisinger*, No. 5:12–cr–78, 2013 WL 3246138, at *2 (D. Vt. 2013) ("The government presented uncontested evidence that the computer used to produce the child pornography in question was manufactured outside the United States."). In fact, the Complaint lacks any amplifying details regarding the type of device or devices that Defendants AR, MJN, and TJH employed to capture pictures during the assault or the type of device or devices the four boys later used "show" those pictures to other students.[5]

In response to these defects, Plaintiff asks in passing the Court to take judicial notice "of the fact that smart phones and/or similar electronic devices on which the photographs could have been taken are articles of interstate commerce, which satisfy the elements of 18 U.S.C. § 2255." ECF No. 55 at 16. Absent any developed argument or supporting evidence, the Court is not convinced that such a fact is "not subject to reasonable dispute." Fed. R. Ev. 201(b). Accordingly,

---

[5] The Court notes that the allegations underlying Plaintiff's Section 2255 claims are particularly thin as to Defendant BA. Plaintiff alleges that Defendants AR, MJN, and TJH took the pictures while BA was outside the door of the room where the assault occurred. *See* ECF No. 1 ¶¶ 55, 59. Thus, the only allegation tending to establish BA's liability under Sections 2255 is the "group" allegation that "Defendants AR, MJN, TJH, and BA showed the pictures they took of Plaintiff to numerous students at Victor Senior High School." *Id.* ¶ 66. The Court is doubtful that this is sufficient to support a claim. *See Clark v. Roccanova*, 772 F. Supp. 2d 844, 848 (E.D. Ky. 2011) (granting dismissal of Section 2252 claim as to a defendant who was only alleged to have "acted in concert with" the other co-defendants and noting the lack of additional facts regarding that defendant's involvement in transmitting the video).

Plaintiff's request for judicial notice cannot save her Section 2255 claims.  Plaintiff's Section 2255 claims are DISMISSED WITHOUT PREJUDICE.  The Court will give Plaintiff an opportunity to amend these claims, however, as the defects relate solely to pleading deficiencies that could arguably be cured by amendment.

### III.     Supplemental Jurisdiction and Leave to Amend

With the dismissal of the federal-law claims, the only basis for jurisdiction over Plaintiff's state-law claims is supplemental jurisdiction.  "While the Court has discretion to maintain jurisdiction over a state law claim under § 1367 after all federal claims have been dismissed, this is not a proper instance to exercise such discretion."  See Shovah v. Mercure, 44 F. Supp. 3d 504, 513 (D. Vt. 2014) (declining to exercise jurisdiction over state law claims after dismissing plaintiff's § 2255 claims where, inter alia, discovery had not yet occurred); see also Goodman by Goodman, 2017 WL 4169427, at *12 (declining to exercise supplemental jurisdiction after dismissing plaintiff's federal claims, including a § 1985 claim); Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (noting that "[b]oth the Second Circuit and the Supreme Court have held that, as a general rule, when the federal claims are dismissed the state claims should be dismissed as well." (internal quotation marks & citations omitted)).  The relatively early stage of this litigation, including the fact that discovery has not yet occurred, counsels in favor of declining to exercise supplemental jurisdiction over Plaintiff's state law claims.  See Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC, 414 F. App'x 334, 337 (2d Cir. 2011) ("[W]e have generally held that where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims.").

Therefore, the Court intends to decline the exercise of supplemental jurisdiction and dismiss the state-law claims.  Because Plaintiff's Section 2255 claims may be cured on

14

amendment, however, the Court will give Plaintiff an opportunity to amend her Complaint before doing so.[6] *See Hampton v. Jud. Branch*, No. 3:18-cv-1445 (VAB), 2019 WL 3337877, at * 13 (D. Conn. July 24, 2019) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint.").

## CONCLUSION

For the reasons stated, Defendants BA, Julie Applebaum, and Louis Applebaum's motion to dismiss for failure to state a claim, ECF No. 14, is GRANTED IN PART and DENIED AS MOOT IN PART; Defendants Alicia Novitsky and Robert G. Novitsky's motion to dismiss for failure to state a claim and/or motion for summary judgment, ECF No. 27, is DENIED AS MOOT; Defendant MJN's motion to dismiss for failure to state a claim, ECF No. 29, is GRANTED IN PART; Defendants Andrea Russell and Michael Russell's motion to dismiss for failure to state a claim, ECF No. 41, is DENIED AS MOOT; Defendant AR's motion to dismiss for failure to state a claim, ECF No. 42, is GRANTED IN PART; and Defendants TJH, Shannon Hay, and Timothy Hay's motion to dismiss for failure to state a claim, ECF No. 47, is GRANTED IN PART and DENIED AS MOOT IN PART.

Plaintiff's Section 1985 claims are DISMISSED WITH PREJUDICE for failure to state a claim under Rule 12(b)(6). Plaintiff's Section 2255 claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim under Rule 12(b)(6). The Court declines to address the sufficiency of Plaintiff's state-law claims because it intends to decline to exercise supplemental jurisdiction over those claims. Plaintiff has until December 20, 2021 to file an amended complaint.

---

[6] Proceeding in this manner will allow the parties notice and an opportunity to be heard on supplemental jurisdiction and will avoid *sua sponte* dismissal of Plaintiff's state-law claims for lack of supplemental jurisdiction, which is disfavored by the Second Circuit. *See Catzin v. Thank you & Good Luck Corp.*, 899 F.3d 77, 84 (2d Cir. 2018) ("[I]nsofar as a district court undertakes, *sua sponte*, the inquiry into whether to maintain supplemental jurisdiction under circumstances similar to those presented here, it must give the parties notice and an opportunity to be heard prior.").

If no amended complaint is filed by December 20, 2021, Plaintiff's Section 2255 claims will be dismissed with prejudice, and her state-law claims will be dismissed without prejudice to refiling in state court.

To the extent Defendants wish to again challenge the sufficiency of Plaintiff's state-law claims once she has filed her amended complaint, and in the interest of efficiency, the parties may incorporate their arguments on the state-law claims by reference and need not repeat them in any subsequent briefing.

IT IS SO ORDERED.

Dated: November 19, 2021
       Rochester, New York

                                                        HON. FRANK P. GERACI, JR.
                                                        United States District Judge
                                                        Western District of New York