UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANE DOE,

                              Plaintiff,

                                                          Case # 21-CV-06353-FPG

v.

                                                          DECISION AND ORDER

AR, MICHAEL S. RUSSELL, ANDREA T. RUSSELL,
MJN, ROBERT G. NOVITSKY, ALICIA M. NOVITSKY
a/k/a ALICIA JEAN, TJH, TIMOTHY J. HAY,
SHANNON M. HAY, BA, LOUIS B. APPLEBAUM, and
JULIE D. APPLEBAUM,

                              Defendants.

## INTRODUCTION

Plaintiff Jane Doe filed this action to recover damages resulting from an alleged rape and sexual assault that occurred in 2014 when she was fourteen years old.  Plaintiff has sued four of her former schoolmates—the alleged perpetrators—and each of their respective parents and/or guardians on various theories of federal and state liability.

On November 19, 2021, this Court issued a Decision and Order in which it dismissed with prejudice Plaintiff's claims pursuant to 42 U.S.C. § 1985(3); dismissed without prejudice Plaintiff's claims arising under 18 U.S.C. § 2255; and declined to address the sufficiency of Plaintiff's state-law claims at that time.  ECF No. 56.  The Court granted Plaintiff until December 20, 2021 to file an amended complaint.  *Id.*

On December 20, 2021, Plaintiff filed an Amended Complaint.  ECF No. 59.  Presently before the Court are: (1) a motion to dismiss the Amended Complaint for failure to state a claim, or in the alternative for summary judgment, filed by Defendants Alicia Novitsky and Robert

Novitsky,[1] ECF No. 60; (2) a motion to dismiss the Amended Complaint for failure to state a claim filed by Defendant MJN, ECF No. 61; (3) a motion to dismiss the Amended Complaint for failure to state a claim filed by Defendants AR, Andrea Russell, and Michael Russell,[2] ECF No. 63; and (4) a motion to dismiss the Amended Complaint for failure to state a claim filed by Defendants Julie Applebaum, Louis Applebaum,[3] and BA, ECF No. 64.[4]  Defendants Shannon Hay, Timothy Hay,[5] and TJH filed an Answer to the Amended Complaint on January 24, 2022.  ECF No. 71.

For the reasons set forth below, the Novitskys' motion to dismiss for failure to state a claim and/or motion for summary judgment, ECF No. 60, is GRANTED IN PART and DENIED IN PART; Defendant MJN's motion to dismiss for failure to state a claim, ECF No. 61, is GRANTED IN PART and DENIED IN PART; Defendant AR's and the Russells' motion to dismiss for failure to state a claim, ECF No. 63, is GRANTED IN PART and DENIED IN PART; and Defendant BA's and the Applebaums' motion to dismiss for failure to state a claim, ECF No. 64, is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

When courts evaluate motions to dismiss, they must accept the facts alleged in the complaint as true and draw all reasonable inferences from those facts in  favor of the non-moving

---

[1] Defendants Robert Novitsky and Alicia Novitsky together shall be referred to as the "Novitskys."

[2] Defendants Michael Russell and Andrea Russell together shall be referred to as the "Russells."

[3] Defendants Louis Applebaum and Julie Applebaum together shall be referred to as the "Applebaums."

[4] Defendants Alicia Novitsky, Robert Novitsky, MJN, AR, Andrea Russell, Michael Russell, Julie Applebaum, Louis Applebaum, and BA shall be referred to collectively as the "Moving Defendants."

Defendants AR, MJN, BA, and TJH shall collectively be referred to as the "Minor Defendants."

Defendants Michael Russell, Andrea Russell, Robert Novitsky, Alicia Novitsky, Louis Applebaum, Julie Applebaum, Timothy Hay, and Shannon Hay shall collectively be referred to as the "Defendant Parents."

[5] Defendant Shannon Hay and Timothy Hay together shall be referred to as the "Hays."

party.  *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015).  Therefore, for the purposes of evaluating the Moving Defendants' motions, the facts below are taken from Plaintiff's Amended Complaint and are accepted as true.

## I.   August 2014 Incident

In August 2014, Plaintiff was fourteen years old and about to start her freshman year at Victor Senior High School ("Victor").  ECF No. 59 ¶¶ 19-20.  On August 24, 2014, Defendant BA invited Plaintiff to "hang out" at his house.  *Id.* ¶ 22.  BA was Plaintiff's classmate at Victor and was also about to begin his freshman year.  *Id.* ¶ 21.  At that time, BA lived with his parents, the Applebaums.  *Id.* ¶¶ 27-28.

Prior to August 2014, BA frequently held parties at the Applebaum house, during which he gave alcohol to those in attendance.  *Id.* ¶ 30.  The Applebaums permitted BA to host these parties and failed to take any preventative measures to ensure that alcohol that belonged to them was not available to BA or the other minors who attended his parties.  ECF No. 59 ¶ 30.  For example, the Applebaums' basement had an unlocked wine cellar from which BA and other minors could easily access alcohol.  *Id.* ¶¶ 28-29.

Plaintiff accepted BA's invitation and brought a friend with her.  *Id.* ¶¶ 22-23.  After Plaintiff arrived at the Applebaums' house, BA served her alcohol.  *Id.* ¶ 25.  The Applebaums were present in the house at the time and the alcohol belonged to them.  *Id.* ¶¶ 26-27.  At some point, BA asked Plaintiff if she wanted him to invite his friends—Defendant AR, Defendant MJN, and Defendant TJH—to hang out with them.  ECF No. 59 ¶ 31.  Plaintiff said she did not want them to come over, but BA invited them anyway "over Plaintiff's objection."  *Id.* ¶ 32.

AR, MJN, and TJH were also Victor students and in the same class year as BA and Plaintiff. *Id.* ¶ 21.  When BA reached out to AR, MJN, and TJH to invite them over to the Applebaums'

house that night, they had already been drinking alcohol at AR's house to celebrate AR's birthday. *Id.* ¶ 33.  At that time, AR lived with his parents, the Russells.  *Id.* ¶¶ 33-34.  The Russells provided AR with the alcohol that he, MJN, and TJH consumed while at the Russell house.  ECF No. 59 ¶ 34.  At some unidentified point before MJN arrived at the Appelbaums' house on August 24, 2014, he was also provided with alcoholic drinks by his parents, the Novitskys.  *Id.* ¶ 35.  Similarly, TJH's parents, the Hays, provided him with alcohol at some unidentified point prior to his arrival at the Applebaum residence.  *Id.*

After AR, MJN, and TJH arrived at the Applebaum house and the group had been "hanging out and drinking," Plaintiff became severely intoxicated.  *Id.* ¶ 36.  AR saw that Plaintiff was severely intoxicated and took her to an unfinished room at the back of the basement.  *Id.* ¶¶ 37-38. The room was empty except for a mattress on the floor.  ECF No. 59 ¶ 38.  After escorting Plaintiff to the back room, AR closed the door, started kissing Plaintiff, and began to undress her.  *Id.* ¶ 39. Plaintiff told AR she wanted to leave the back room and go back with her friend, but AR refused to let her go.  *Id.* ¶ 40.  Instead of allowing Plaintiff to exit the back room, AR took his pants off and tried to force Plaintiff to perform oral sex.  *Id.* ¶ 41.  Plaintiff vomited when AR tried to put his genitals in her mouth.  *Id.*  ¶ 42.

After Plaintiff got sick, AR left the back room and then reentered with MJN, TJH, and BA. ECF No. 59 ¶ 43.  Plaintiff was still undressed when the Minor Defendants returned to the room together.  *Id.* ¶ 44.  Plaintiff's friend came and helped Plaintiff to the bathroom so she could get cleaned up from having vomited.  *Id.* ¶ 45.  AR, MJN, and TJH decided to leave the Applebaum house because Plaintiff had gotten sick and the three told BA that they were heading home.  *Id.* ¶ 46.  The three departed but, rather than going home, returned together to the house about fifteen or twenty minutes later.  *Id.* ¶ 47.

When AR, MJN, and TJH returned to the house, Plaintiff was still intoxicated.  The three grabbed her and carried her to the back room.  ECF No. 59 ¶ 48.  Once in the room, they undressed Plaintiff against her will, put her on her knees, and took their pants off.  *Id.* ¶ 50.  The three then inserted their genitals into Plaintiff's mouth and forced her to perform oral sex against her will.  *Id.* ¶ 51.  They touched Plaintiff's genitalia and breasts without her consent and against her will.  *Id.* ¶ 52.  Plaintiff tried to resist this touching and refused to have sex with them.  *Id.* ¶ 53.

Plaintiff alleges that AR, MJN, and TJH "continued to rape Plaintiff orally against her will and without consent for approximately 20 minutes."  ECF No. 59 ¶ 58.  During those twenty minutes, Plaintiff made several attempts to crawl toward the door of the back room, but, each time, AR, MJN, and TJH grabbed her by the hips and dragged her away from the door.  *Id.* ¶ 54.  At times, they stood between Plaintiff and the door to the back room to prevent her from leaving.  *Id.* ¶ 57.  Plaintiff could hear her friend on the other side of the door banging on the door to the back room to try to help her, but BA was guarding the door and preventing Plaintiff's friend from coming to her aid.  *Id.* ¶ 55.

While in the back room, AR, MJN, and TJH "took pictures of Plaintiff being orally raped" on their cellphones, which, Plaintiff alleges, were "iPhones and/or Android phones."  *Id.* ¶ 59.  Plaintiff "saw an iPhone and/or Android phone in the hands of AR."  ECF No. 59 ¶ 60.  She alleges that the specific "phone(s) used to take pictures of [her] rape was an iPhone, rather than an Android."  *Id.* ¶ 62.  "On more than one occasion" during the twenty-minute ordeal, Plaintiff "saw flashes."  *Id.* ¶ 60.  She asked the three perpetrators what the flashes were and they told her "it was just a flashlight."  *Id.*  After "forcing [Plaintiff] to perform oral sex," AR, MJN, and TJH "finally rap[ed] Plaintiff, all against Plaintiff's will and without Plaintiff's consent."  *Id.* ¶ 87.  Plaintiff was "severely injured" as a result of this attack.  *Id.*

Plaintiff "lost consciousness during the rape" while in the back room, and "her next memory is sitting on the couch in BA's basement." ECF No. 59 ¶ 67. She does not recall how she got to the couch from the back room. *Id.* ¶ 68. Once seated on the couch Plaintiff was "in shock and could not move her body." *Id.* ¶ 70. BA proceeded to undress Plaintiff again while she was in this state "and inserted his fingers in Plaintiff's genitalia for approximately one minute, against Plaintiff's will and without her consent." *Id.* ¶¶ 69-70. At some point thereafter, Plaintiff was able to leave, and she and her friend left the house. *Id.* ¶ 71.

## II.    Aftermath

At Victor's freshman orientation on the day following the assault, Plaintiff was approached by a male classmate who asked "if [she] had fun with [AR] , [MJN], and [TJH] last night." ECF No. 59 ¶ 78. In the months that followed, Plaintiff was subjected to "numerous instances in which Victor Senior High School students made reference to the August 2014 rape of Plaintiff." *Id.* ¶ 79.

At some point in time after the August 24, 2014 incident, the Minor Defendants "used the internet to download the pictures they took of Plaintiff's rape from the 'Snapchat' application." *Id.* ¶ 72. They downloaded the pictures onto their phones and onto the phones of "other Victor Senior High School students[ ]." *Id.* In addition, the Minor Defendants "upload[ed] the pictures "to the 'Snapchat' application and used the internet to transmit said pictures from the 'Snapchat' application amongst themselves and to "other Victor Senior High School students[ ]." *Id.* ¶¶ 73-74. In addition to Snapchat, the Minor Defendants used text messaging to "transmit the pictures they had taken of Plaintiff's rape" to their fellow students at Victor. ECF No. 59 ¶ 75. In addition to using his phone to transmit pictures of Plaintiff, BA designated one of the "photos of Plaintiff's

rape" as the "contact photo" for Plaintiff's number in the contacts of "his own iPhone and/or Android phone throughout his enrollment at Victor Senior High School." *Id* ¶ 76.

"[B]oth iPhones and Android phones contain a camera and are able to take, send, and receive pictures over the internet." *Id.* ¶ 63. iPhones are "manufactured in China" and not one of "the top ten (10) brands of Android phones . . . are made and/or manufactured in the United States of America." *Id.* ¶ 64. Thus, Plaintiff alleges, "[i]t is . . . a near-certainty that the phones used to take pictures of Plaintiff's rape were manufactured outside of the U.S.A. and had to be transported in interstate commerce." *Id.*

As her freshman year wore on, Plaintiff continued to be tormented by her classmates regarding the assault. For instance, in December 2014, Plaintiff was at her friend's house when "another student at Victor Senior High School came up to Plaintiff and told her that he recognized her from the photos, then made several jokes relating to the rape of Plaintiff." ECF No. 59 ¶ 79. A few months later, during a spring 2015 class trip to Washington, D.C., eight male students in the back of a bus chanted "three dicks" at Plaintiff, seemingly in reference to the August 24, 2014 assault. *Id* ¶ 80. One of those male students appeared to be masturbating under a blanket while seated on the bus and asked Plaintiff to "help him." *Id.* He also, upon exiting the bus, "ran up to Plaintiff and slapped her, causing her male classmates to laugh." *Id.*

Plaintiff did not leave the incident behind her with the end of her freshman year. Instead, she experienced the rippling effects from it throughout high school. During their tenure at Victor, the Minor Defendants "showed and/or transmitted over the internet the pictures they took of Plaintiff to numerous students at Victor Senior High School throughout Plaintiff's enrollment." *Id.* ¶ 77. During her four years of high school, "pictures of Plaintiff's rape were routinely transmitted over the internet," thus she "was forced to endure pictures of her rape being shown

and/or transmitted . . . to her classmates." *Id.* ¶¶ 81-82.  Plaintiff was periodically informed by her classmates that the pictures were being disseminated, and her "classmates would often refer to AR, MFN [sic], TJH, and BA in the collective, meaning that all four (4) had been and/or were showing and/or sharing their photos of Plaintiff's rape to Plaintiff's classmates by using the internet and their iPhones and/or Android Phones."  ECF No. 59 ¶¶ 83-84.

During Plaintiff's senior year, "several students, including one of Plaintiff's close friends, had a discussion with AR regarding pictures of Plaintiff's rape being saved on MJN's phone."  *Id.* ¶ 85.  This conversation prompted AR to "[have] a discussion" with MJN about the pictures.  *Id.* Ultimately, AR "convinced MJN to delete [the pictures] off of [his] phone."  *Id.*

**III.    Additional Allegations Against the Defendant Parents**

The Amended Complaint includes additional allegations that specifically relate to the potential liability of the Defendant Parents.

At the time of the August 2014 incident, each of the Minor Defendants was a minor under the care of his respective parents.  ECF No. 59 ¶¶ 90, 92, 94, 96.  Each set of Defendant Parents— the Novitskys, Hays, Russells, and Applebaums—"had actual and constructive knowledge of [their respective son's] dangerous propensity and discriminatory animus towards females but failed to supervise and/or restrain [him]."  *Id.* ¶¶ 91, 93, 95, 97.

Plaintiff further alleges, as noted above, that the Novitskys, Hays, Russells, and Applebaums "furnished alcoholic beverages" to MJN, TJH, AR, and BA who were minors at the time of the alleged incident.  *Id.* ¶ 98.  "Plaintiff was injured by reason of intoxication or impairment of ability of Defendants AR, MJN, TJH, and BA."  *Id.* ¶ 99.  The Novitskys, Hays, Russells, and Applebaums "knowingly caused such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages for such person

with knowledge or reasonable cause to believe that Defendants AR, MJN, TJH, and BA were under the age of twenty-one." *Id.* ¶ 100.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In evaluating a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *In re Express Scripts Holding Co. Secs. Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, at *6 (S.D.N.Y. May 22, 2018) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  However, a court "is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alterations and internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 65-66 (2d Cir. 2018) (citing *Iqbal*, 556 U.S. at 678) (citation and internal quotation marks omitted).

## DISCUSSION

Rather than analyze each motion separately, the Court will address each claim that the Moving Defendants challenge in their motions, beginning with Plaintiff's federal claims before turning to her claims arising under state law.[6]

---

[6] As a threshold matter, the Novitskys move this Court, as an alternative to their motion to dismiss, for summary judgment as to Plaintiff's claims brought against them.  ECF No. 60.  The Court declines to convert their motion to dismiss into one for summary judgment as discovery has not yet commenced.  *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010).

I.     **Federal-Law Claims**

A.  **28 U.S.C. § 1985(3) Claim (Claim 1)**

Plaintiff's Amended Complaint includes a claim for conspiracy to interfere with her civil rights under 42 U.S.C. § 1985(3) based upon the same facts as the Section 1985 claim in her initial complaint.  ECF No. 59 at 15-16.  Defendants AR, MJN, and BA each move to dismiss this claim from the Amended Complaint, noting the Court's prior dismissal with prejudice.  ECF No. 61-1 at 5-7; ECF No. 63-1 at 2-3; ECF No. 64-1 at 6-7.  In response, Plaintiff "withdraws all causes of action brought pursuant to 42 U.S.C. § 1985(3)."  ECF No. 73 at 15; ECF No. 74 at 15; ECF No. 76 at 11.  Accordingly, Plaintiff's Section 1985 claim in her Amended Complaint is DISMISSED WITH PREJUDICE, as set out in the Court's prior Decision and Order.  ECF No. 56 at 7-10.

B.  **18 U.S.C. § 2255 Claims as Against Defendants AR, MJN, and BA (Claims 2, 3, and 5)**

The Court considers next Plaintiff's second, third, and fifth causes of action, which allege violations of 18 U.S.C. § 2255, also known as "Masha's Law," against Defendants AR, MJN, and BA.  ECF No. 59 at 16-19.  The Court previously dismissed these claims in Plaintiff's initial complaint but did so without prejudice and granted leave to amend.  ECF No. 56 at 10-14.  Plaintiff has reasserted these claims in her Amended Complaint.  ECF No. 59 at 17-19.

Section 2255 "was enacted as part of The Child Abuse Victims' Rights Act of 1986." *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013).  The statute "expanded the scope of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95–225, 92 Stat. 7 (1978), to provide a civil remedy for personal injuries suffered by victims of child sexual exploitation." *Id.* (internal quotation marks omitted).  Section 2255(a) provides in pertinent part:

> Any person who, while a minor, was a victim of a violation  of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless

of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $ 150,000 in value.

18 U.S.C. § 2255(a). "[I]n order to be subject to liability under Section 2255, a defendant must be proven to have violated at least one of the criminal statutes listed in Section 2255 by a preponderance of the evidence." *Singleton*, 951 F. Sup. 2d at 584 (internal quotation marks omitted).

Defendants AR, MJN, and BA each move to dismiss Plaintiff's Section 2255 claims in her Amended Complaint. ECF No. 61-1 at 7-8; ECF No. 63-4 at 8-11; ECF No. 64-1 at 7-8. While Defendant MJN argues for partial dismissal of Plaintiff Section 2255 claims—insofar as Plaintiff has failed to adequately plead a Section 2255 claim predicated on a violation of Section 2251—Defendants BA and AR argue for dismissal of all of Plaintiff's Section 2255 claims, regardless of which statute such violation is predicated upon.

### 1. Claims Predicated on 18 U.S.C. § 2251

In its prior Decision and Order, the Court noted that "Plaintiff equivocates as to which underlying criminal statute Defendants violated—she cites Section 2252 in her Complaint but Section 2252 *and* Section 2251 in her opposition briefs." ECF No. 56 at 12. Once again, Plaintiff only specifically alleges violations of Section 2252 in her Amended Complaint, but asserts the following argument in her briefing: "although not specifically recited in the Amended Complaint as a separate ground for liability under [Section] 2255, the facts alleged are sufficient to sustain a cause of action pursuant to 18 U.S.C. § 2251." *See generally* ECF No. 59; ECF No. 76 at 8.

In relevant part, Section 2251 states as follows:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who

transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251.

In her briefing, Plaintiff cites specific allegations in the Amended Complaint which she asserts demonstrate that the Minor Defendants "induced and/or coerced Plaintiff to engage in sexually explicit conduct"; "produced a visual depiction"; "and such visual depiction(s) was transmitted in interstate commerce through smart phones and social media." ECF No. 76 at 7-10. However, Defendant MJN argues that Plaintiff does not allege that he, nor the other Minor Defendants for that matter, "'used, employed, persuaded, induced, enticed, or coerced' her to take part in the alleged August 24, 2014 sexual conduct 'for the purpose of producing a visual depiction of that conduct.'" ECF No. 61-1 at 8 (quoting 18 U.S.C. § 2251). Defendants AR and BA also raise this argument. *See* ECF No. 63-4 at 9-10; ECF No. 64-1 at 7.

That "the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct *for the purpose of producing a visual depiction of that conduct*" is an element of a Section 2251(a) offense. *See United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010) (emphasis added). In essence, Defendants MJN, AR, and BA argue that the pictures were merely incidental to the sexual assault and that Plaintiff has not adequately

alleged that the purpose of the assault was the production of the pictures.  Despite this contention, the facts in the Amended Complaint suggest otherwise.

After initially leaving the house the night of the August 2014 incident, Defendants MJN, AR, and TJH returned together.  ECF No. 59 ¶ 47.  It is unclear from the Amended Complaint what prompted the three to return and what, if anything, they discussed during the 15 to 20 minutes they were gone.  What is clear is that (1) they knew that Plaintiff had been severely intoxicated when they left a short time ago and (2) they all returned together.  *Id.* ¶¶ 46-47.  Upon entering the basement, the three grabbed Plaintiff and carried her to the back room.  *Id.* ¶ 48.  They undressed her, sexually assaulted her, and "finally rap[ed] her."  *Id.* ¶¶ 50-53, 87.  They entered the back room with their cellphones and took pictures of the sexual assault.  *Id.* ¶¶ 59-62.

The fact that the three returned together and, acting in concert: grabbed Plaintiff and carried her into the back room; undressed her; assaulted her; brought their phones into the back room; and photographed the sexual assault suggests that the three entered the back room with the intent to document the sexual activity on their phones.  *See United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996) (analyzing a Section 2251 claim and finding reasonable the jury's inference that the co-defendants, who each brought a camera, "collaborated in their decision to bring photographic equipment" and "had brought their photographic equipment to do precisely what they did: to record sexual activity.").  Thus, the allegations are sufficient for the Court to plausibly infer that the images here were the product of "purposeful steps" taken by the Minor Defendants "to facilitate the pictures," rather than "merely incidental to [the] sexual encounter."  *See United States v. Wardlow*, 666 F. App'x 861, 863 (11th Cir. 2016) (citing *United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012)).

Moreover, the Minor Defendants' conduct in the months and years after the August 2014 sexual assault further supports the inference that—rather than merely incidental to the sexual assault—"the explicit images [themselves] were important to [the Minor Defendants]." *United States v. Torres*, 894 F.3d 305, 312-13 (D.C. Cir. 2018).  In the aftermath of the assault, the Minor Defendants "upload[ed] the pictures "to the 'Snapchat' application and used the internet to transmit said pictures from the 'Snapchat' application amongst themselves and to "other Victor Senior High School students[ ]."  ECF No. 59 ¶¶ 73-74.  In addition, to Snapchat, the Minor Defendants used text messaging to "transmit the pictures they had taken of Plaintiff's rape" to their fellow students at Victor.  *Id.* ¶ 75.  Defendant BA not only disseminated the images, but also designated one of the "photos of Plaintiff's rape" as the "contact photo" for Plaintiff's number in the contacts of his phone.  *Id* ¶ 76.

Indeed, even *four years later* during their senior year at Victor, the Minor Defendants  had the pictures.  That year, "several students, including one of Plaintiff's close friends, had a discussion with AR regarding pictures of Plaintiff's rape being saved on MJN's phone."  *Id.* ¶ 85. These allegations permit the Court to infer that the Minor Defendants placed value in having the pictures and being able to disseminate them to their classmates.  That is sufficient for the Court to infer that the Minor Defendants sexually assaulted Plaintiff for the purpose of producing the photographs.  *See Torres*, 894 F.3d at 312-313 ("The jury thus could infer from [defendant's] dishonesty in keeping the photos over [plaintiff's] opposition that obtaining the sexually images was itself important to [defendant]—not merely incidental to the immediate gratification he derived from [plaintiff's] conduct.").

Accordingly, insofar as Plaintiff's Section 2255 claims are premised on a violation of Section 2251, Defendants AR, MJN, and BA's motions to dismiss such claims are DENIED.

### 2.  Claims Predicated on 18 U.S.C. § 2252

The Court considers next whether the Amended Complaint adequately alleges Section 2255 claims predicated on a violation of Section 2252.

Section 2252 prescribes punishment for:

Any person who knowingly transports or ships [child pornography] using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means . . .  § 2252(a)(1).

Any person who . . . knowingly receives, or distributes [child pornography] using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means . . . or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means . . . . § 2252(a)(2).

In its prior Decision and Order regarding Plaintiff's initial Complaint, the Court dismissed without prejudice Plaintiff's claims predicated on Section 2252 because "the Complaint [did] not present sufficient facts from which a link to interstate commerce may be inferred"; "the Complaint lack[ed] sufficient allegations that the device used to capture the photographs would constitute an 'article' of interstate commerce"; and "the Complaint lacked any amplifying details regarding the type of device or devices that Defendants AR, MJN, and TJH employed to capture pictures during the assault or the type of device or devices the four boys later used 'show' those pictures to other students."  ECF No. 56 at 12-13.

Now, Defendants AR and BA argue that, despite the additional and enhanced allegations in the Amended Complaint, Plaintiff still falls short of adequately alleging "that the photographs were disseminated over the internet and through interstate commerce."  ECF No. 63-4 at 10-11; ECF No. 64-1 at 7-8.  They also argue that Plaintiffs allegations regarding the types of phones used by the Defendants are speculative and present "unwarranted deductions of fact."  *Id.*

In the Amended Complaint, Plaintiff alleges that Defendants AR and BA used the internet to download the pictures they took of Plaintiff's rape from the 'Snapchat' application." ECF No. 59 ¶ 72. They downloaded the pictures onto their phones and onto the phones of "other Victor Senior High School students[ ]." *Id.* In addition, the Minor Defendants "upload[ed] the pictures "to the 'Snapchat' application and used the internet to transmit said pictures from the 'Snapchat' application amongst themselves and to "other Victor Senior High School students[ ]." *Id.* ¶¶ 73-74. In addition to Snapchat, the Minor Defendants used text messaging to "transmit the pictures they had taken of Plaintiff's rape" to their fellow students at Victor. ECF No. 59 ¶ 75. Moreover, in addition to using his phone to transmit pictures of Plaintiff, BA designated one of the "photos of Plaintiff's rape" as the "contact photo" for Plaintiff's number in the contacts of "his own iPhone and/or Android phone throughout his enrollment at Victor Senior High School." *Id* ¶ 76.

Whereas, in her initial Complaint, Plaintiff had simply alleged that Defendants BA and AR "showed" the pictures to fellow students, she has now alleged that they used the internet to send the pictures. In other words, she has now plausibly alleged that Defendants AR and BA "us[ed] a means or facility of interstate commerce within the meaning of § 2252(a)(1)" to send the pictures. *See United States v. Clarke*, 979 F.3d 82, 93 (2d Cir. 2020) ("The use of the Internet to move video files from [Defendant's] computer to the government agents' computer constituted transportation using a means or facility of interstate commerce within the meaning of § 2252(a)(1)."); *see also SB on behalf of AB v. Newark Central School District*, No. 6:21-CV-06138, 2022 WL 541773, at *6 (W.D.N.Y. Feb. 23, 2022) (rejecting argument that plaintiff had failed to allege "distribution of child pornography over the internet and/or interstate dissemination," where complaint alleged that sexually explicit photographs were shared over Snapchat).

The Amended Complaint also provides specific allegations regarding the type of device employed by each Minor Defendant and where such devices are manufactured. Plaintiff alleges that AR "took pictures of Plaintiff being orally raped" on his "iPhones and/or Android phone[ ]." ECF No. 59 ¶ 59. She specifically alleges that she "saw an iPhone and/or Android phone in the hands of AR." *Id.* ¶ 60. As for BA, he also had an "iPhone and/or Android phone" which he used to transmit pictures of Plaintiff. As stated above, BA designated one of the "photos of Plaintiff's rape" as the "contact photo" for Plaintiff in that "iPhone and/or Android phone." *Id* ¶ 76.

Plaintiff alleges that "iPhones are "manufactured in China" and not one of "the top ten (10) brands of Android phones . . . are made and/or manufactured in the United States of America." *Id.* ¶ 64. Thus, she asserts in the Amended Complaint, "[i]t is . . . a near-certainty that the phones used to take pictures of Plaintiff's rape were manufactured outside of the U.S.A. and had to be transported in interstate commerce." *Id.*

Based on these new allegations, the Court finds that, at the pleading stage, Plaintiff has plausibly alleged that the devices used to capture and transmit the photographs constitute "articles" of interstate commerce. *See United States v. Boles*, 914 F. 3d 95, 107 (2d Cir. 2019) (finding interstate or foreign commerce element satisfied "where a defendant possessed images of child pornography on computer equipment manufactured outside of this country.").

Accordingly, Defendants AR and BA's respective motions to dismiss Plaintiff's Section 2255 claims predicated on Section 2252 are DENIED.

## II. **State-Law Claims**

In the Court's November 19, 2021 Decision and Order addressing the Defendants' original motions to dismiss, the Court dismissed all the federal-law claims and did not reach the sufficiency

of the state-law claims because it intended to decline to exercise supplemental jurisdiction over those claims, absent the filing of an amended complaint.  ECF No. 56 at 14-15.

However, the Court indicated that "[t]o the extent Defendants wish to again challenge the sufficiency of Plaintiff's state-law claims once she has filed her amended complaint, and in the interest of efficiency, the parties may incorporate their arguments on the state-law claims by reference and need not repeat them in any subsequent briefing."  ECF No. 56 at 16.  The Moving Defendants have each incorporated by reference their prior briefing and arguments regarding the sufficiency of Plaintiff's state-law claims.  ECF No. 60-1 at 3-4; ECF No. 61-1 at 9; ECF No. 63-1 at 3; ECF No. 64-1 at 6.  Likewise, Plaintiff has incorporated by reference her prior briefing and arguments in response to the Moving Defendants' respective motions to dismiss the state-law claims.  ECF No. 73; ECF No. 74; ECF No. 75; ECF No. 76.

The Court considers below those state-law claims which the Moving Defendants move to dismiss.

### A.  Assault and Battery as Against Defendant BA (Claim 9)

Defendant BA moves to dismiss Plaintiff's claim against him for assault and battery brought against him, arguing that Plaintiff's "threadbare" and "conclusory" allegations are insufficient to state a claim.[7]  ECF No. 14-1 at 13-14.  Defendant further argues that "[t]here are no facts pled that BA had intercourse with Plaintiff at any time.  Furthermore, Plaintiff's allegation that BA sexually assaulted her merely recites certain elements of the cause of action and fails to address others."  *Id.* at 14.  Plaintiff opposes this dismissal arguing that she has adequately stated a claim.

---

[7] Defendants AR and MJN did not move to dismiss the assault and battery claims against them (Claims 6 and 7). Accordingly, those claims will go forward.

"To state claims for assault and battery under New York law, a plaintiff must allege 'an intentional placing of another person in fear of imminent harmful or offensive contact' and 'an intentional wrongful physical contact with another person without consent,' respectively." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 89 (E.D.N.Y. 2020) (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)).

Despite Defendant BA's argument to the contrary, Plaintiff's allegations are more than sufficient to state claims for assault and battery against him.  Plaintiff alleges that, after she "lost consciousness during the rape" in the back room of the Applebaum's basement, "her next memory is sitting on the couch in BA's basement."  ECF No. 59 ¶ 61.  Now conscious, and seated on the couch in the basement, Plaintiff was still "in shock and could not move her body."  *Id.* ¶ 63. Defendant BA then undressed Plaintiff "and inserted his fingers in Plaintiff's genitalia for approximately one minute, against Plaintiff's will and without her consent."  *Id.* ¶¶ 63-64.  Based on these facts, Plaintiff "sufficiently alleges that [BA] intentionally caused [her] to fear imminent, harmful, and offensive contact, and did wrongfully contact her without consent."  *See Antoine*, 489 F. Supp. 3d at 90.  Accordingly, Defendant BA's motion to dismiss this claim is DENIED.

### B.  Intentional Infliction of Emotional Distress Claims

#### 1.  As Against Defendants AR, MJN, and BA (Claims 10, 11, and 13)

Plaintiff brings claims for intentional infliction of emotional distress ("IIED") against Defendants MJN, AR, BA, and TJH.  ECF No. 59 at 24-26.  Defendants MJN, AR, and BA each move to dismiss Plaintiff's intentional infliction of emotional distress claim in their respective motions to dismiss.  ECF No. 14-1 at 14; ECF No. 29-1 at 13-14; ECF No. 42-1 at 14-16.  They argue, *inter alia*, that dismissal of Plaintiff's IIED claims is warranted because the alleged acts underpinning such claims "fall within the ambit of other torts."  ECF No. 14-1 at 14; ECF No. 29-

1 at 13-14; ECF No. 42-1 at 16.  In other words, any IIED claims are superfluous because Plaintiff "has pled assault, battery, and general negligence."  ECF No. 14-1 at 14.

"[W]here the conduct complained of falls well within the ambit of other traditional tort liability," the New York Court of Appeals "has cautioned that a claim for IIED may not be sustainable." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)).  This is so because the "clear purpose" of an IIED claim "is to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied." *Turley*, 774 F.3d at 159 n18.  Thus, "[t]he tort of IIED simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results," or, in other words, "where the gravamen of a complaint is another tort, IIED is not available as a cause of action." *Id.*  This includes where a plaintiff brings an IIED claim and "tort claims for . . . false imprisonment, assault and battery." *Rubio v. Cnty. of Suffolk*, No. 01-CV-1806, 2007 WL 2993830, at *5 (E.D.N.Y. Oct. 9, 2007) (dismissing plaintiff's IIED claim as "duplicative of plaintiffs' State tort claims for false arrest, false imprisonment, assault and battery.").

Here, Plaintiff's IIED claims are based upon the same allegations and facts as her tort claims for false imprisonment, assault, and battery.  All claims arise from the "sexual assault and rape of Plaintiff" in August 2014 at the Applebaums' house. *See e.g.*, ECF No. 59 ¶¶ 127, 133, 139, 145, 151, 155, 159, 163.

Plaintiff argues against dismissal on the basis that the conduct of Defendants MJN, AR, and BA "cannot be considered anything short of extreme, outrageous, and atrocious."  ECF No. 33 at 16.  But that counterargument does not remedy the issue of duplication which, as a matter of law, is sufficient to warrant dismissal of Plaintiff's IIED claims. *See McCarthy v. Roosevelt Union*

*Free Sch. Dist.*, No. 15-CV-01468, 2017 WL 4155334, at *4 n.6 (E.D.N.Y. Sept. 19, 2017) (dismissing plaintiff's IIED claim "as a matter of law because it overlaps with traditional tort theories of liability."). Accordingly, MJN, AR, and BA's motions to dismiss the IIED claim as to each of them are GRANTED and such claims are DISMISSED.

### 2. As Against Defendant TJH (Claim 12)

Although Defendant TJH did not move to dismiss Plaintiff's IIED claim against him, the reasons justifying dismissal of the claims against Defendants AR, MJN, and BA apply equally to him. "The Court 'has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted,' so long as it gives 'the plaintiff an opportunity to be heard.'" *Emilee Carpenter, LLC v. James*, No. 21-CV-6303, 2021 WL 5879090, at *22 (W.D.N.Y. Dec. 13, 2021) (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)).

Here, "Plaintiff has had an opportunity to be heard on the legal viability of her claims in conjunction with the [Defendants AR, MJN, and BA's] motion[s] to dismiss." *Id.* (citing *Ali v. Ramos*, No. 16-CV-1994, 2018 WL 1353210, at *1 n.1 (S.D.N.Y. Mar. 14, 2018)). Indeed, the fact that the dismissal of the IIED claims as to TJH's co-defendants is a matter of law, supports this approach as the Court need not delve into the factual distinctions in each Minor Defendant's conduct. Accordingly, the Court *sua sponte* dismisses the IIED claim against Defendant TJH for the reasons discussed above.

### C. Negligent Infliction of Emotional Distress Claims

#### 1. As Against Defendants AR, MJN, and BA (Claims 14, 15, 17)

Plaintiff brings claims for negligent infliction of emotional distress ("NIED") against Defendants MJN, AR, BA, and TJH. ECF No. 59 at 27-29. Defendants MJN, AR, and BA each move to dismiss Plaintiff's NIED in their respective motions to dismiss, arguing, as with Plaintiff's

IIED claims, that the NIED claims must be dismissed because the allegations regarding those claims "fall within the ambit of other torts." ECF No. 14-1 at 14-15; ECF No. 29-1 at 13-14; ECF No. 42-1 at 14-16.

Courts generally view NIED "causes of action [as] duplicative of causes of action alleging . . . false imprisonment, and assault and battery." *Demosthene v. City of New York*, No. 14-CV-816, 2015 WL 5093116, at *26 (E.D.N.Y. June 26, 2015). As with Plaintiff's IIED claims, her NIED claims are premised on the same conduct underlying her intentional tort claims. *See* ECF No. 59 ¶¶ 167, 171, 175, 179. Accordingly, Defendant AR, MJN, and BA's motions to dismiss Plaintiff's NIED claims are GRANTED and such claims are DISMISSED.

### 2. As Against TJH (Claim 16)

As with Plaintiff's IIED claim against TJH, the Court *sua sponte* dismisses the NIED claim against Defendant TJH on the same grounds as its dismissal of the NIED claims against Defendant AR, MJN, and BA for failure to state a claim on which relief can be granted because "Plaintiff has had an opportunity to be heard on the legal viability of her claims in conjunction with [Defendants AR, MJN, and BA's] motion[s] to dismiss." *Emilee Carpenter, LLC*, 2021 WL 5879090, at *22 (citing *Ali*, 2018 WL 1353210, at *1 n.1). Accordingly, the NIED claim against Defendant TJH is DISMISSED.

### D. Negligence Claim as Against Defendant BA (Claim 21)

Plaintiff brings claims for negligence against the Minor Defendants. ECF No. 59 at 31-34. Defendant BA moves to dismiss Plaintiff's negligence claim, arguing that "[s]ince the allegations against BA are all intentional acts, an action sounding in negligence cannot withstand a motion to dismiss, and any cause of action alleging a negligent act, must be dismissed." ECF No. 14-1 at 17. In response, Plaintiff argues "that allegations that one was alleged to 'permit' a certain act are

negligent, not intentional," and that, under Federal Rule of Civil Procedure 8, Plaintiff should be permitted to "plead in the alternative."  ECF No. 33 at 15-16.

"Though litigants may allege alternate, or inconsistent, claims in pleading, Rule 8(d), Fed.R.Civ.P., when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed."  *Bah v. City New York*, No. 13 Civ. 6690, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014).

Plaintiff's negligence claim against BA alleges that "[o]n or about August 24, 2014, Plaintiff was raped by Defendant BA at BA's residence located in Victor, New York."  ECF No. 59 ¶ 204. Further, Plaintiff alleges that "Defendant BA permitted and/or intentionally failed and/or neglected to prevent the negligent  and/or grossly negligent conduct and/or allowed other tortious conduct by Defendants herein and, further, allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur."  *Id.* ¶ 205.  These allegations are conclusory, but the Court must consider the factual allegations regarding Defendant BA's conduct during the August 2014 incident.

While Plaintiff was being sexually assaulted in the back room of the basement by Defendants AR, MJN, and TJH, BA was guarding the door and preventing Plaintiff's friend from coming to her aid.  ECF No. 59 ¶ 55.  Once Plaintiff was no longer in the backroom and regained consciousness on the basement couch, BA proceeded to undress Plaintiff "and inserted his fingers in Plaintiff's genitalia for approximately one minute, against Plaintiff's will and without her consent."  *Id.* ¶¶ 63-64.

Based on these allegations, the Court does not agree with Defendant BA's contention that "the [Amended Complaint] alleges only intentional conduct on [BA's] part."  *See Canosa v. Ziff*, No. 18 Civ. 4115, 2019 WL 498865, at *8 (S.D.N.Y. Jan. 28, 2019).   Accepting Plaintiff's

allegations as true, the Court cannot say that they "may give rise to liability only for intentional acts." *Cf. id.*   Indeed, unlike the cases upon which Defendant BA relies, here, his conduct in remaining outside the door to the back room while the other three sexually assaulted Plaintiff inside may ultimately prove to be a negligent act rather than an intentional one.   Accordingly, Defendant BA's motion to dismiss Plaintiff's negligence claim is DENIED.

### E.  New York Civil Rights Law § 79-N as Against Defendants MJN, AR, and BA (Claims 22, 23, and 25)

Plaintiff brings claims for bias-related violence under New York Civil Rights Law § 79-N ("NYCR § 79-n") against the Minor Defendants.  ECF No. 59 at 34-37.  Defendants MJN, AR, and BA each move to dismiss Plaintiff's NYCR § 79-n claim in their respective motions to dismiss. *See* ECF No. 14-1 at 17-18; ECF No. 29-1 at 16-17; ECF No. 42-1 at 17-18.

NYCR § 79-n provides, in pertinent part, that "[a]ny person who intentionally selects a person or property for harm or causes . . . physical injury or death to another . . . in whole or in substantial part because of a belief or perception regarding the . . . gender . . . of a person, regardless of whether the belief or perception is correct, shall be liable, in a civil action or proceeding.  N.Y. Civ. Rights L. § 79-n(2).  The statute, "which establishes a civil remedy for bias-related violence or intimidation, is a relatively new law" and, as such, "there is little guidance as to its applicability because New York courts have not had the opportunity to consider it."  *Spring v. Allegany-Limestone Central School District*, No. 14-CV-476S, 2017 WL 6512858, at *8 (W.D.N.Y. Dec. 20, 2017) (citation & internal quotation marks omitted).

Defendants MJN, AR, and BA each argue that, while Plaintiff alleges that each Minor Defendant was motivated by bias toward "the female gender" and that each boy "intentionally selected Plaintiff for harm . . .  because of his belief or perception regarding Plaintiff's gender," Plaintiff does not offer specific "allegations to explain what belief or perception [these Defendants]

24

had regarding [Plaintiff's] gender."  ECF No. 42-1 at 17.  This, they argue, is fatal to Plaintiff's NYCR § 79-n claim.

In response, Plaintiff points to her allegations that (1) "Defendants AR, MJN, TJH, and BA conspired to sexually assault and rape Plaintiff and to deprive Plaintiff of equal protections of the laws and/or equal privileges and immunities under the laws solely based on their invidious discriminatory animus towards Plaintiff's gender"; and (2) that Defendants AR, MJN, and TJH each "intentionally selected Plaintiff for harm and caused physical injury in whole or in substantial part because of his belief or perception regarding Plaintiff's gender."  ECF No. 33 at 19; ECF No. 39 at 16-17; ECF No. 50 at 19.  In addition, Plaintiff cites the paragraphs in her Complaint which recount the August 2014 sexual assault and the aftermath.  *Id.* (citing ECF No. 1 ¶¶ 37-73); *see also* ECF No. 59 ¶¶ 37-89.  Plaintiff asserts that the facts of the August 2014 sexual assault render plausible her allegations that the Minor Defendants were motivated by "invidious discriminatory animus towards Plaintiff's gender" and that they selected Plaintiff because of their "belief or perception regarding Plaintiff's gender."  ECF No. 50 at 19.

On the one hand, AR, MJN, and BA are correct that the Amended Complaint does not allege the specific belief or perception the Minor Defendants held regarding females that resulted in them intentionally selecting for Plaintiff for physical harm—here, sexual assault and rape.  Thus, the key question becomes whether the Court may infer that belief or perception, sufficient to state a claim under NYCR § 79-n, from the incident itself.

At least one New York court has considered this question, finding that "allegations of forcible, nonconsensual contact, together with plaintiff's allegation that such conduct was motivated by [defendant's] gender bias, could, if proved, demonstrate the bias-related violence or intimidation required to recover under Civil Rights Law § 79-n."  *A.M.P. v. Benjamin*, 201 A.D.

25

3d 50, 55 (N.Y. App. Div. 2021).  In reaching this conclusion, the Third Department reasoned that "[a]lthough plaintiff does not specifically detail [defendant's] bias-related conduct within the third cause of action, the facts alleged earlier in the complaint . . . are replete with allegations that [defendant] forcibly subjected plaintiff to nonconsensual sexual contact, including one occasion when [defendant] forced plaintiff to perform oral sex on him and at least two occasions when he forcibly touched plaintiff's genitals."  *Id.*  This reasoning applies with equal force to the facts of this case.

Here, Plaintiff has alleged Defendant AR took Plaintiff to a back room of the Applebaums' basement after seeing that she was severely intoxicated and, once in the backroom, forced Plaintiff to perform oral sex against her will.  ECF No. 59 ¶¶ 37-42.  She further alleges that, a short time later, while she was still intoxicated, Defendants AR, MJN, and TJH, acting together, grabbed her and carried her to the back room, undressed her against her will, forced her to perform oral sex against her will, touched her genitalia and breasts against her will, prevented her from leaving the room, and "finally rap[ed] Plaintiff, all against Plaintiff's will and without Plaintiff's consent."  *Id.* ¶¶ 48-54, 87.  Furthermore, she alleges that, after the rape and sexual assault, and while she was "in shock and could not move her body," BA then proceeded to undress Plaintiff again "and inserted his fingers in Plaintiff's genitalia for approximately one minute, against Plaintiff's will and without her consent."  *Id.* ¶¶ 68-71.

As in *A.M.P.*, "the allegations of forcible, nonconsensual contact" in this case, coupled with Plaintiff's—albeit general—allegation "that such conduct was motivated by [the Minor Defendants'] gender bias" and beliefs or perceptions regarding Plaintiff's gender are sufficient at the pleading stage.  *See A.M.P.*, 201 A.D. 3d at 55 ("[A]ccording the complaint a liberal construction, accepting plaintiff's allegations as true and providing her the benefit of every

26

favorable inference, we find that plaintiff has stated a [NYCR § 79-n] claim.").  Of course, the Minor Defendants' respective beliefs or perceptions ultimately must be proved to sustain this claim.  But, under *A.M.P.*, Plaintiff's allegations are sufficient at this stage to permit this claim to go forward.

Accordingly, Defendant MJN, AR, and BA's respective motions to dismiss Plaintiff's NYCR § 79-n claims are DENIED.

### F.  False Imprisonment as Against Defendants BA and AR (Claims 42 and 45)

Plaintiff brings claims for false imprisonment against Defendants MJN, AR, BA, and TJH. ECF No. 59 at 56-59.  Defendants AR and BA move to dismiss Plaintiff's false imprisonment claim.  ECF No. 14-1 at 19; ECF No. 42-1 at 18.  Plaintiff responded in opposition as to each Defendant.

"Under New York law, a plaintiff seeking to establish a false imprisonment claim must prove: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *De Abreu v. Johnson Controls Fire Protection LP*, No. 18-CV-2686, 2021 WL 4409716, at *15 (E.D.N.Y. Sept. 27, 2021).

#### 1.  Defendant BA

Defendant BA argues that Plaintiff has failed to state a claim because there is nothing in the factual allegations that permits the Court to infer "more than  the mere possibility that . . . BA had an intent to confine Plaintiff or that Plaintiff was conscious of any action that BA allegedly took to confine her."  ECF No. 14-1 at 19.

Here, with respect to whether Defendant BA intended to confine Plaintiff, the Amended Complaint alleges that BA was guarding the door to the basement back room while Plaintiff was

in the back room being sexually assaulted and raped by the other Minor Defendants.  ECF No. 59 ¶ 55.  The Amended Complaint also alleges that, Plaintiff's friend was banging on the door to the back room in an attempt to help Plaintiff, but that BA prevented her from coming to Plaintiff's aid. *Id.* ¶ 55.  From these allegations, the Court plausibly infers that—through his actions of guarding the door and preventing Plaintiff's friend from coming to her aid—BA intended to confine Plaintiff in the back room.  *See Campoverde v. Sony Pictures Entertainment*, 2002 WL 31163804, at *8 (S.D.N.Y. Sept. 30, 2002) (denying motion to dismiss false imprisonment claim where plaintiff attempted to leave room but door was guarded).

Turning to whether Plaintiff was conscious of her confinement the Court finds this element is adequately plead as well.  Prior to the sexual assault and rape that took place in the back room of the Applebaum's basement, Plaintiff had become "severely intoxicated."  ECF No. 59 ¶ 36. However, while in the back room, she was conscious enough to hear her friend on the other side of the door banging on the door to the back room.  *Id.* ¶ 55.  She also made several attempts to crawl toward the door and escape the back room.  *Id.* ¶ 54.  While a plaintiff "need not show that [she] physically attempted to leave" to make out a false imprisonment claim, *Campoverde*, 2002 WL 31163804, at *8, Plaintiff's attempts here underscore that she was conscious of her confinement.

Plaintiff "lost consciousness during the rape" while in the back room, and "her next memory is sitting on the couch in BA's basement."  *Id.* ¶ 61.  However, consciousness during the entirety of confinement is not necessary to state a claim for false imprisonment.  *See Doe v. Alsaud*, 224 F. Supp. 3d. 286, 295 (S.D.N.Y. 2016) (finding *prima facie* false imprisonment claim established where the plaintiff alleges that the defendant "drugged her and forcibly assaulted, raped, and sodomized her against her will in a hotel room while she went in and out of

consciousness."). Thus, the allegations, accepted as true, clearly establish that Plaintiff was conscious of her confinement because she has alleged what occurred in the back room and the only other individuals in the back room were Defendants TJH, MJN, and AR.

Accordingly, the Court finds that Plaintiff has sufficiently stated a false imprisonment claim against Defendant BA and Defendant BA's motion to dismiss that claim is DENIED.

### 2. Defendant AR

Defendant AR argues for dismissal of Plaintiff's false imprisonment claim on the basis that "Plaintiff relies solely on a single conclusory allegation that states '[t]he detention and false imprisonment of Plaintiff by Defendant AR was unlawful, willful, and without the consent of Plaintiff.'" ECF No. 42-1 at 18. Further, Defendant AR argues that the Amended Complaint includes "no discussion regarding the required elements of consciousness or privilege." *Id.* Plaintiff opposes dismissal and contends that the Amended Complaint "contains ample facts to render the underlying legal theory plausible." ECF No. 50 at 20. The Court agrees with Plaintiff.

As set out above with respect to Defendant BA, the allegations in the Amended Complaint are more than sufficient to establish that Plaintiff was conscious of her confinement.

Specifically regarding AR's intent, Plaintiff has alleged that he, along with MJN and TJH, grabbed her and carried her to the back room while she was severely intoxicated, ECF No. 59 ¶¶ 36, 48; once in the room, AR, TJH, and MJN undressed Plaintiff against her will, put her on her knees, and took their pants off, *Id.* ¶ 50; the three boys then sexually assaulted Plaintiff against her will and without her consent, *id.* ¶¶ 51-53, 58. During the sexual assault, Plaintiff made several attempts to crawl toward the door of the back room to escape, but, each time, AR, along with MJN and TJH, grabbed her by the hips and dragged her away from the door. *Id.* ¶ 54. In addition, at

times, the three, including AR, stood between Plaintiff and the door to the back room to prevent her from leaving.  *Id.* ¶ 57.

These allegations are more than sufficient to establish that (1) AR intended to confine Plaintiff; (2) Plaintiff was conscious of the confinement, (3) Plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *See De Abreu*, 2021 WL 4409716, at *15.  Accordingly, Defendant AR's motion to dismiss Plaintiff's false imprisonment claim against him is DENIED.

### G. Failure to Supervise and Restrain as Against the Russells, Novitskys, and Applebaums (Claims 26, 27, 28, 29, 32 and 33)

Plaintiff seeks to hold the Defendant Parents liable for the August 2014 incident and its aftermath based upon a state-law liability theory for failure to supervise and restrain.  ECF No. 59 at 38-44.  The Russells, Applebaums, and Novitskys each move to dismiss this claim.  ECF No. 14-1 at 20-21; ECF No. 27-1 at 11-13; ECF No. 41-1 at 8-10.

"It is well settled that a parent's liability for the torts of his or her child does not arise merely from the parental relationship itself."  *Armour v. England*, 210 A.D. 561, 561 (N.Y. App. Div. 3d Dep't 1994).  However, "liability may arise where a parent fails to supervise a child with a known propensity for vicious conduct."  *Id.*  To sustain a claim on such a theory, "it must be established both that the child had a tendency to engage in vicious conduct which might endanger a third party *and* that the child's parent(s) had knowledge of his or her propensities in this regard."  *Id.* (emphasis in original) (citation & internal quotation marks omitted).

Plaintiff's failure to supervise and restrain claims are premised on the allegation that each Defendant Parent "had actual and constructive knowledge of [his or her Minor Defendant's] dangerous propensity and discriminatory animus towards females but failed to supervise and/or

restrain [him]."[8]  ECF No. 59 ¶¶ 91, 93, 95, 97.  The Russells, Novitskys, and Applebaums each argue that Plaintiff has failed to adequately allege their respective knowledge regarding their Minor Defendant's dangerous propensity and discriminatory animus towards females.  ECF No. 14-1 at 21; ECF No. 27-1 at 12; ECF No. 41-1 at 9.  The Court agrees.

Outside of the conclusory allegation that each Defendant Parent "had actual and constructive knowledge of [his or her Minor Defendant's] dangerous propensity and discriminatory animus towards females but failed to supervise and/or restrain [him]," ECF No. 59 ¶¶ 91, 93, 95, 97, there are no factual allegations regarding such knowledge.  For instance, there is no allegation of a prior incident of animus towards females as to any of the Minor Defendants such as would put a parent on notice of a violent or discriminatory propensity based upon gender.  The only allegation tending to establish the requisite knowledge of each Defendant Parent is wholly conclusory—which is fatal to Plaintiff's claims premised on a theory of failure to supervise and restrain.  Indeed, courts in New York have found "a single prior incident" insufficient to "establish a propensity on the part of the child" so as to put a parent on notice.  *See Rivers v. Murray*, 29 A.D.3d 884, 884-85 (N.Y. App. Div. 2006).  Here, Plaintiff's Amended Complaint falls even shorter than that, as she fails to allege even a single prior incident of discriminatory animus towards females on the part of Defendants MJN, AR, or BA.

In an effort to save these claims, Plaintiff cites several "situations in which the parent may be held liable" and argues that her "allegations . . . are sufficient to satisfy and make plausible several of these avenues for . . . liability."  ECF No. 51 at 6-7.  This argument fails.

---

[8] Elsewhere in the Amended Complaint, Plaintiff alleges that each Defendant Parent "had actual and constructive knowledge of [his or her Minor Defendant's] dangerous propensity and discriminatory animus towards individuals of *certain sexual orientation*."  ECF No. 59 ¶¶ 237, 245, 253, 261, 269, 277, 285, 293 (emphasis added).  The Court assumes this to be an error as none of the factual allegations in the Amended Complaint discuss Plaintiff's sexual orientation or that she was targeted on that basis.  Even if Plaintiff did include these allegations purposefully, the same failure to adequately allege knowledge on the part of each Defendant Parent applies with equal force to these allegations as it does regarding the allegations of animus towards females based on gender.

"[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015). The Court declines Plaintiff's invitation to undertake the exercise of considering every potential New York common law avenue under which a parent may be held liable for the conduct of his or her child.  Plaintiff has not specifically raised claims based on such avenues in her Amended Complaint.  Plaintiff specifically raises claims for failure to supervise and restrain which the Court has considered and determined to be insufficient.

Accordingly, Plaintiff fails to adequately allege each Defendant Parent's respective knowledge regarding his or her Minor Defendant's discriminatory animus towards females, and her failure to supervise and restrain claims against the Russells, Applebaums, and Novitskys are therefore DISMISSED.  *See* S*haw v. Roth*, 54 Misc. 2d 418, 420 (N.Y. Sup. Ct. 1967).

### H. N.Y. General Obligations Law as Against the Russells, Novitskys, and Applebaums (Claims 34, 35, 36, 37, 40, and 41)

Plaintiff brings claims against the Defendant Parents for violations of New York General Obligations Law §§ 11-100, alleging that the Defendant Parents furnished alcoholic beverages to the Minor Defendants.  ECF No. 59 at 48-56.  The Russells, Novitskys, and Applebaums each move to dismiss this claim.  ECF No. 14-1 at 22-23; ECF No. 27-1 at 13-17; ECF No. 41-1 at 10-12.

Section 11-100 provides:

Any person who shall be injured in person, property, means of support or otherwise, by reason of the intoxication or impairment of ability of any person under the age of twenty-one years, whether resulting in his death or not, shall have a right of action to recover actual damages against any person who *knowingly causes such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages* for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years.

*Rust v. Reyer*, 91 N.Y.2d 355, 359 (1998) (emphasis in original).  The Court considers below the arguments of each set of Defendant Parents in turn.

### 1.  The Russells

The Russells argue that Plaintiff's Section 11-100 claim against them fails because the Amended Complaint "is devoid of any facts or supported allegations that the Russells ***knowingly*** caused the intoxication or impairment of AR by unlawfully furnishing or assisting in procuring alcoholic beverages to AR as required by the statute."  ECF No. 41-1 at 11 (emphasis in original).

In the Amended Complaint, Plaintiff alleges that, prior to arriving at the Applebaum's house on August 24, 2014, Defendants AR, MJN, and TJH had been drinking alcohol at AR's house and that that alcohol was provided by Defendants Michael Russell and Andrea Russell.  ECF No. 59 ¶¶ 33-35.  Accepting these allegations as true, which the Court must do at the motion to dismiss stage, Plaintiff has alleged facts which are sufficient for the Court to draw the plausible inference that Defendants Michael Russell and Andrea Russell knowingly caused the intoxication or impairment of AR by furnishing him with alcoholic beverages.  Accordingly, Defendants Michael Russell and Andrea Russell's motion to dismiss this claim is DENIED.

### 2.  The Applebaums

Similarly, the Applebaums argue for dismissal based upon their assertion that "Plaintiff has not alleged that [they] even knew alcohol would be or was being consumed on the date of the alleged incidents."  ECF No. 14-1 at 23.

With respect to the Applebaums, Plaintiff alleges that BA "frequently held parties with alcoholic beverages at his house" and that Defendants Louis Applebaum and Julie Applebaum "permitted" these parties.  ECF No. 59 ¶¶ 30-31.  In addition, the Applebaums had a wine cellar in their basement and the alcohol therein was "readily available for consumption and easily

accessible to minors." *Id.* ¶ 28. Plaintiff also alleges that both Defendant Louis Applebaum and Defendant Julie Applebaum furnished alcohol to the Minor Defendants. *Id.* ¶¶ 341, 348.

Accepted as true, these facts are sufficient to permit the Court to plausibly infer that the Applebaums "knowingly cause[ed]" the "intoxication or impairment of ability" of the Minor Defendants "by unlawfully furnishing to or unlawfully assisting [them] in procuring alcoholic beverages." *See Rust*, 91 N.Y.2d at 359. The Applebaums motion to dismiss these claims is DENIED.

### 3. The Novitskys

Plaintiff alleges in the Amended Complaint the Novitskys provided alcoholic beverages to Defendant MJN before he went to Defendant AR's house and then, ultimately, to Defendant BA's house on August 24, 2014. ECF No. 59 ¶ 35. Plaintiff further alleges that the Novitskys "furnished alcoholic beverages to Defendants AR, MJN, TJH, and BA, who were minors. *Id.* ¶ 98. The Novitsky's argue that these allegations are insufficient to state a claim because being "an unknowing bystander or an innocent dupe" is insufficient for liability to attach. ECF No. 27-1 at 14. Further, the Novitskys argue, that liability requires that the parents be "more than a passive participant who merely knew of the underage drinking." *Id.*

Accepting Plaintiff's allegations as true, and drawing all plausible inferences in Plaintiff's favor, Plaintiff has alleged that the Novitskys provided MJN with alcohol prior to his departure on the night of the August 2014 incident. *See* ECF No. 59 ¶¶ 98, 100. At this juncture, and given the facts of this case, Plaintiff has plausibly alleged facts which, if proven at trial, could demonstrate that the Novitskys "played an indispensable role in the scheme to make the alcohol available" to the Minor Defendants on the night in question. *Rust*, 91 N.Y.2d 355, 361.

To be sure, the Plaintiff's allegations as to the Novitskys are not as robust as those regarding the Applebaums and Russells.  But given the early stage of this litigation, "[r]eading the statute to foreclose responsibility in these circumstances would allow unintended circumvention of the legislation and negate its deterrent purpose."  *Id.*  Accordingly, the Novitskys motion to dismiss these claims is DENIED.

## III.  Punitive Damages

Plaintiff requests punitive damages in her Amended Complaint.  ECF No. 59 at 59-65.  The Russells and Defendant AR argue that "the Amended Complaint fails to allege sufficient facts to support an award of punitive damages" and request that this Court "dismiss[ ] the claim for punitive damages."  ECF No. 63-1 at 5-6; *see also* ECF No. 41-1 at 12-14; ECF No. 42-1 at 18-20.  In response, Plaintiff contends that the allegations in her amended Complaint "are sufficient to support an award of punitive damages."  ECF No. 50 at 20; ECF No. 51 at 9-10.

"It is well established in New York law that punitive damages are a remedy and not a separate cause of action for pleading purposes."  *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 517 (S.D.N.Y. 2018) (citation & internal quotation marks omitted).  "[A] demand for punitive damages is more properly characterized as a request for relief, rather than as an independent claim, such that dismissal at the pleading stage is inappropriate."  *Horowitz v. Spark Energy, Inc.*, 19cv7534, 2020 WL 6561600, at *1 (S.D.N.Y. July 31, 2020).  Indeed, even "summary judgment is an ill-suited procedural vehicle" for the question of whether a court should permit a plaintiff to seek a particular remedy, such as punitive damages, as such a question is most appropriately raised in a pretrial motion *in limine.  See In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 517 F. Supp. 2d 662, 666-667 (S.D.N.Y. 2007).

Here, the parties are at the pleading stage and no discovery has occurred.  Therefore, the Russells' and Defendant AR's motion to dismiss Plaintiff's request for punitive damages is DENIED as premature.  *See Horowitz*, 2020 WL 6561600, at *1.  Defendants are not precluded from raising this issue again at the appropriate time.  *See Lovejoy-Wilson v. Noco Motor Fuels, Inc.*, 242 F. Supp. 2d 236, 244 (W.D.N.Y. 2003) ("I find that the request to dismiss the punitive damages claim may properly be brought as a pretrial motion *in limine*.").

## CONCLUSION

For the reasons stated, the Novitskys' motion to dismiss for failure to state a claim and/or motion for summary judgment, ECF No. 60, is GRANTED IN PART and DENIED IN PART; MJN's motion to dismiss for failure to state a claim, ECF No. 61, is GRANTED IN PART and DENIED IN PART;  the  Russells' and AR's motion to dismiss for failure to state a claim, ECF No. 63, is GRANTED IN PART and DENIED IN PART; and the Applebaums' and BA's motion to dismiss for failure to state a claim, ECF No. 64, is GRANTED IN PART and DENIED IN PART.

The following claims are DISMISSED: Plaintiff's Section 1985 claim (Claim 1); Plaintiff's IIED claims (Claims 10, 11, 12, 13); Plaintiff's NIED claims (Claims 14, 15, 16, 17); Plaintiff's claims for failure to supervise and restrain as against Defendants Michael Russell, Andrea Russell, Robert Novitsky, Alicia Novitsky, Louis Applebaum, and Julie Applebaum (Claims 26, 27, 28, 29, 32 and 33).

IT IS SO ORDERED.

Dated: May 23, 2022
   Rochester, New York

           _____
           HON. FRANK P. GERACI, JR.
           United States District Judge
           Western District of New York